UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                             Plaintiff,

      -against-                    1:12-CR-307 (LEK) & 1:12-CR-308 (LEK)

CARL O. LOGAN,

                             Defendant.

---

### MEMORANDUM-DECISION AND ORDER

## I.   INTRODUCTION

Citing his age (58) and poor health, Carl O. Logan, an inmate currently incarcerated at the Fort Dix, New Jersey Federal Correctional Institution ("FCI Fort Dix"), moved on December 14, 2019 for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. No. 132 ("Motion").[1] On April 2, 2020, Logan moved to have the Court consider an additional argument justifying his immediate release, namely his high risk for contracting a deadly case of COVID-19. Dkt. No. 137 ("Motion Supplement").[2] The Government has responded to both filings. Dkt. Nos. 135 ("Response to Motion"); 139 ("Response to Motion Supplement").

For the following reasons, the Court grants the Motion for Compassionate Release in part and denies it in part.

---

[1] For simplicity, the Court only cites to the Docket filings for No. 1:12-CR-307. No. 1:12-CR-308 contains filings identical to those listed in No. 1:12-CR-307, albeit with different Docket numbers. However, some filings to which the Court cites in this Memorandum-Decision and Order, see e.g., Dkt. Nos. 36 ("Presentence Investigation Report" or "PSIR"); 123 ("Sentencing Transcript"), may only be found in No. 1:12-CR-307 even though they also apply to No. 1:12-CR-308.

[2] The Court refers to the Motion and Motion Supplement collectively as, "Motion for Compassionate Release."

## II.     BACKGROUND

On August 12, 2015, this Court sentenced Logan to 148 months imprisonment after pleading guilty to one count of conspiracy to possess with intent to distribute more than 28 grams of cocaine base and one count of conspiracy to possess with intent to distribute more than 500 grams of cocaine.[3] Dkt. Nos. 98 ("August 2015 Minute Entry"); 99 ("Judgment"). The Court determined that Logan's statutory mandatory minimum on both counts was 10 years and that, because Logan was a career offender, the advisory guideline range was 262–327 months. Dkt. Nos. 36 ("Presentence Investigation Report" or "PSIR") at 42; 123 ("Sentencing Transcript") at 3, 7. Notwithstanding these findings, the Court imposed a sentence below the guidelines range because of Logan's age, his poor health, and because he was "an atypical career offender" in that Logan "had been arrest free for 11 years prior to the commission of the instant offense." Dkt. No. 113 ("Statement of Reasons").

## III.    LEGAL STANDARD

As amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), 18 § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment

> upon motion of the Director of the Bureau of Prisons [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—

---

[3]  Both counts are violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851.

> (i) extraordinary and compelling reasons warrant such a reduction
>
> ***
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

§ 3582(c)(1)(A).

Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release. This policy statement, which has not been amended since the passage of the First Step Act, states, in relevant part:

> Upon motion of the Director of the [BOP] under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);
>
> and (3) the reduction is consistent with this policy statement.

§ 1B1.13.

Section 1B1.13 provides that extraordinary and compelling reasons exist in the following situations:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

§ 1B1.13 cmt. n.1.

IV.     DISCUSSION

4

**A. Exhaustion**

As indicated above, the Court must first determine whether Logan has exhausted his

administrative remedies as required to pursue his Motion for Compassionate Release, or, if not,

whether the Court may waive the exhaustion requirements in this case.

On March 30, 2020, Logan submitted a request to BOP for home confinement "because

of his vulnerability to COVID-19." Resp. to Mot. Suppl. at 14–16 ("Request for Release").

Neither Logan nor the Government have provided documentation showing BOP has taken any

action regarding Logan's request. Thus, as the Government observes, because thirty days have

yet to elapse, Logan has failed to exhaust his administrative remedies. Resp. to Mot. at 5–6;

Resp. to Mot. Suppl. at 3–6.

The Court acknowledges that its sister courts are split on whether a court may waive of

the exhaustion requirement. Some courts have found a court may waive the requirement under

certain circumstances. See, e.g., United States v. Haney, No. 19-CR-541, 2020 WL 1821988, at

*3–4 (S.D.N.Y. Apr. 13, 2020); United States v. Perez, No. 17-CR-513, 2020 WL 1546422, at

*1–3 (S.D.N.Y. Apr. 1, 2020); United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880,

at *3 (S.D.N.Y. Apr. 3, 2020); United States v. Colvin, No. 19-CR-179, 2020 WL 1613943, at *2

(D. Conn. Apr. 2, 2020); United States v. Sawicz, No. 08-CR-287, 2020 WL 1815851, at *2

(E.D.N.Y. Apr. 10, 2020). Others have found a court cannot waive the requirement under any

circumstances. See, e.g., United States v. Roberts, No. 18-CR-528, 2020 WL 1700032, at *2–5

(S.D.N.Y. Apr. 8, 2020); United States v. Pereyra-Polanco, No. 19-CR-10, 2020 WL 1862639, at

*1 (S.D.N.Y. Apr. 14, 2020); United States v. Hernandez, No. 18-CR-834, 2020 WL 1445851, at

*1 (S.D.N.Y. Mar. 25, 2020); United States v. Schultz, No. 17-CR-193, 2020 WL 1872352, at

*3–6 (W.D.N.Y. Apr. 15, 2020).

Today, for the reasons mentioned below, this Court joins others in this Circuit that have

found that they may waive the exhaustion requirement.

"Even where," as here, "exhaustion is seemingly mandated by statute . . . the requirement

is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019). "Congressional intent is

'paramount' to any determination of whether exhaustion is mandatory." See Haney, 2020 WL

1821988, at *3 (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992). In amending

§ 3582(c)(1)(A) via the First Step Act, Congress sought to "expand compassionate release" and

"expedite[] compassionate release applications." 164 Cong. Rec. S7314-02, 2018 WL 6350790

(Dec. 5, 2018); see also Hearing on Compassionate Release and the Conditions of Supervision

Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector

General, Department of Justice) ("The First Step Act—and the critical 30-day lapse route it

provided [in § 3582(c)(1)(A)'s exhaustion requirement]—directly responded to a

compassionate-release system so plagued by delay that prisoners sometimes died while waiting

for the BOP to make a decision.")

Given prisons are "powder kegs for infection" that have therefore allowed "the

COVID-19 virus [to] spread[] with uncommon and frightening speed," United States v. Skelos,

No. 15-CR-317, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020); see also An Ohio prison is

now the largest source of virus infections in the country, THE N.Y. TIMES (Apr. 20, 2020),

https://www.nytimes.com/2020/04/20/us/coronavirus-live-news.html#link-52cdb996 (noting that

"four of the 10 largest-known sources of infection in the United States were correctional

facilities"), the need to expedite consideration of requests for compassionate release premised on potential exposure to COVID-19 takes on even new urgency, see Haney, 2020 WL 1821988, at *4 (noting that "at the time the First Step Act passed, a 30-day period before which to seek judicial review would have seemed exceptionally quick. But under present circumstances, each day a[n] defendant must wait before presenting what could otherwise be a meritorious petition threatens him with a greater risk of infection and worse." (internal citation and quotation marks omitted)). Hence, the Court concludes that Congressional objectives underlying the First Step Act not just permit, but compel, Courts to waive § 3582(c)(1)(A)'s exhaustion requirement.

The Government argues that if the Court were to waive exhaustion in this instance, it would ignore "the valuable role that the BOP plays in the compassionate release process." Resp. to Mot. Suppl. at 4. While the Court acknowledges that exhaustion requirements are generally designed to "protect[] administrative agency authority," McCarthy v. Madigan, 503 U.S. 140, 145 (1992), the structure of § 3582(c)(1)(A)'s exhaustion requirement actually undermines BOP's ability to maintain its role in the compassionate release process. See Haney, No. 19-CR-541, 2020 WL 1821988, at *3. For, if the prison warden does not respond to a request for compassionate release within thirty days, an inmate may raise that request in court before BOP has rendered a final decision. Consequently, § 3582(c)(1)(A)'s exhaustion requirement "evinces congressional intent that an defendant has a right to a prompt and meaningful judicial determination of whether [he or] she should be compassionately released, regardless of whether administrative remedies have been exhausted." United States v. Russo, No. 16-CR-441, 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020). "[I]n the extraordinary circumstances now faced by prisoners as a result of the COVID-19 virus and its capacity to spread in swift and deadly

fashion, the objective of meaningful and prompt judicial resolution is clearly best served by permitting [inmates] to seek relief before the 30-day period has elapsed." Haney, 2020 WL 1821988, at *4.

In sum, the Court concludes the exigencies of addressing the COVID-19 pandemic allows it to waive the exhaustion requirement, and, therefore, does so here.

### B. Extraordinary and Compelling Reasons

The Government argues that § 1B1.13, which the Court must consider on a motion for compassionate release under § 3582(c)(1)(A), "does not contemplate a sentence reduction based on a pandemic or other issue that affects all of society." Resp. to Mot. Suppl. at 7.[4] The Court agrees that § 1B1.13's three specific examples of "extraordinary and compelling reasons" do not cover the high risk of developing a deadly case of COVID-19. However, the Court concludes that § 1B1.13's catchall provision, which simply observes that there can be "extraordinary and compelling reason[s] other than" those three examples, covers the high risk of contracting a life-threatening case of COVID-19. See United States v. Resnick, No. 14-CR-810, 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) ("Resnick's high susceptibility to COVID-19 falls within the purview of this catchall."); see also United States v. Pinto-Thomaz, No. 18-CR-579, 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020) ("Despite its vague language, the Court takes a liberal view of this residual category. The purpose of including such a category within the

---

[4] The Government also argues that Logan's age and deteriorating health alone, without COVID-19, fail to establish that he falls into one of the categories of extraordinary and compelling circumstances identified by § 1B1.13. Resp. to Mot. at 7. The Court need not address this argument since, as described below, the Court concludes that Logan's particular vulnerability to contracting a deadly case of COVID-19 constitutes an extraordinary and compelling reason for compassionate release.

Sentencing Commission's policy statement can only be to clarify that the list of extraordinary and compelling circumstances in paragraphs (A) through (C) is not exhaustive.").

That the catchall provision technically requires the director of the BOP, rather than the courts, to determine whether other examples of extraordinary and compelling circumstances may exist is of no moment. Because, without a quorum, the Sentencing Commission has been unable to amend § 1B1.13 since the passage of the First Step Act,[5] "the most natural reading of the amended § 3582(c) . . . is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it." United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019).

The Government further argues that BOP's "Coronavirus (COVID-19) Phase Two Action Plan," which outlines initiatives BOP is taking to reduce the spread of COVID-19 in its prisons, demonstrates that COVID-19 should not be considered an extraordinary and compelling reason for relief. Resp. to Mot. Suppl. at 8–10. But while "the BOP has admirably put [COVID-19] transmission mitigation measures in place . . . substantial medical and security challenges [will] almost certainly arise" warranting compassionate release of at least some inmates, such as Logan. See United States v. Stephens, No. 15-CR-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (internal citation omitted); United States v. Esparza, No. 07-CR-294, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) ("Even in the best run prisons, officials might find it difficult if not impossible to follow the [Centers for Disease Control and Prevention's [CDC's] guidelines for

_____

[5] "The Commission is unable to update the Sentencing Guidelines because, at the moment, it lacks a sufficient number of appointed commissioners to take this action." United States v. Rodriguez, No. 03-CR-271, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) (citing United States v. Maumau, No. 08-CR-785, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020)).

preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and

keeping a distance of at least six feet from others." (citing CDC, *What Law Enforcement*

*Personnel Need to Know about Coronavirus Disease 2019, COVID-19*)).[6]

Having determined that susceptibility to contracting a deadly case of COVID-19 may be

considered an extraordinary and compelling reason for granting compassionate release, the Court

now discusses Logan's underlying health conditions and how they make him vulnerable to

developing a life-threatening case of the illness.

Logan, who has had a stent implanted to prevent arterial blockage, also suffers from

diabetes, hypertension, hypercholesterolemia, and coronary artery disease. Mot. at 6–7 ("Medical

Records"); PSIR at 39 (observing that Logan has "long-standing histories of heart disease,

diabetes, high blood pressure, and elevated cholesterol"). Other courts have found similar

ailments, when considered in the context of contracting COVID-19, constitute extraordinary and

compelling reasons warranting release. See, e.g., Rodriguez, 2020 WL 1627331, at *8 (finding

"the confluence of COVID-19" with diabetes and hypertension constitutes an extraordinary and

compelling reason for compassionate release); Sawicz, 2020 WL 1815851, at *2 (finding "the

COVID-19 pandemic, combined with" hypertension, constitutes an extraordinary and compelling

reason); Colvin, 2020 WL 1613943, at *4 (finding "extraordinary and compelling reasons" where

the inmate has "diabetes, a serious medical condition which substantially increases her risk of

---

[6] Finally, the Government argues that Logan "has not submitted medical records, nor an affidavit" to back up his claim for compassionate release. Resp. to Mot. Suppl. at 11. The Government is correct to the extent that Logan did not submit medical records with his Motion Supplement. But, as indicated below, Logan did submit the records with his original Motion.

severe illness if she contracts COVID-19." (internal quotation marks, citation, and alteration omitted)).[7]

That Logan has demonstrated extraordinary and compelling reasons justifying his release is underscored by the proximity to Logan's release date and his demonstrated rehabilitation while in prison.

Logan has about one year and nine months remaining on his sentence, according to the release date provided on the BOP's website. Find an inmate, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Apr. 22, 2020) (noting Logan's projected release date is January 19, 2022). Other Courts have released inmates in this environment with similar time remaining on their sentences. See, e.g., Zukerman, 2020 WL 1659880, at *1 (27 months remaining); Rodriguez, 2020 WL 1627331, at *12 (18 months remaining).

Furthermore, even though demonstrated rehabilitation cannot by itself constitute an extraordinary and compelling reason to release someone from prison, it can help justify a finding that such extraordinary and compelling reasons exist. See Brown, 411 F. Supp. at 449. While incarcerated for the current offense, Logan has shown rehabilitation. He has taken many courses while in prison to prepare him for returning to life on the outside, on topics such as personal finance, securing a job, and food preparation. Mot. at 3–4; id. at 8 ("BOP Course Record"). He has also completed several drug treatment programs while incarcerated. Mot. at 3–4; id. at 9

---

[7] Logan's health conditions also provide further justification for waiving § 3582(c)(1)(A)'s exhaustion requirement here. See Zukerman, 2020 WL 1659880, at *4 (finding that exhaustion may be waived in part because the inmate had diabetes and hypertension); Colvin, 2020 WL 1613943, at *2 (finding that exhaustion may be waived in part because the inmate had diabetes).

("Residential Drug Abuse Treatment Program Certificate of Achievement"). And the Government does not point to any disciplinary record that Logan may have developed while in prison.

### C.  Section 3142(g) Factors

Section 1B1.13 provides that a sentence should only be reduced only if releasing the inmate will not pose a danger to the safety of others or the community. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).

Section 3142(g) sets out various factors that help courts assess whether releasing an inmate will pose a danger to others and the community, including (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)).

As to the first factor, while Logan's crimes involved a controlled substance, it does not appear to have involved any violence. PSIR at 6–31. And Logan demonstrated remorse for his conduct. Id. at 31.

Regarding the second factor, Logan does appear have a somewhat lengthy criminal history outside of the current offense, but that history involves offenses that occurred over twenty years ago when he was a younger man. Id. at 33–37. Only one offense appears to have involved violence—a misdemeanor assault charge from 2001. Id. at 37. Moreover, as noted above, Logan is an atypical career offender in that, while he has a criminal record, Logan had been arrest free for eleven years prior to the commission of the offense for which he is now incarcerated. Statement of

12

Reasons. Additionally, while Logan does have a history of substance and alcohol abuse, PSIR at 40, he has completed several drug treatment programs during his incarceration for the current offense and prior to his imprisonment, Mot. at 3–4; Residential Drug Abuse Treatment Program Certificate of Achievement; PSIR at 40–41. Finally, although her relation to Logan is unclear, a woman named Juliana Gonzalez has submitted a letter of support in favor of Logan's early release from prison. Dkt. No. 136 ("Gonzalez Letter"). The Gonzalez Letter suggests Logan will have a support network if he were released.

With respect to the final factor, the Court finds that Logan will not pose a danger to the community given his stale and mostly non-violent criminal history. Furthermore, to the extent that Logan may be a carrier of SARS-CoV-2, which causes COVID-19, the Court will order Logan to remain in home quarantine for fourteen days upon his release so that he does not infect others in the community.

"Accordingly, the Court finds that [Logan] does not pose a risk to others or to his community if released." See United States v. Perdigao, No. 07-CR-103, 2020 WL 1672322, at *4 (E.D. La. Apr. 2, 2020); Rodriguez, 2020 WL 1627331, at *11.

**D.  Section § 3553(a) Factors**

"Finally, the Court must 'consider[ ] the [sentencing] factors set forth in [S]ection 3553(a) to the extent that they are applicable.'" Rodriguez, No. 03-CR-271, 2020 WL 1627331, at *11 (citing § 3582(c)(1)(A)).

As discussed above, the first factor—the nature and circumstances of the of the offense and the history and characteristics of the inmate—weighs in favor of Logan's release. See § 3553(a)(1).

13

As to the second factor—the need for the sentence imposed to serve the enumerated purposes of punishment—Logan has served most of his sentence given his projected release date of January 19, 2022. <u>See</u> § 3553(a)(2). Consequently, to deny Logan's request for compassionate release might "impose a sentence 'greater than necessary' to comply with the statutory purposes of punishment," including serious illness—or even death—from COVID-19. <u>See</u> <u>Rodriguez</u>, 2020 WL 1627331, at *12 (quoting § 3553(a)).

Regarding the last factor—the need to avoid unwarranted sentence disparities among inmates with similar records who have been found guilty of similar conduct—the Court does not worry that releasing Logan now would create any sentencing disparities because Logan has served most of his sentence. <u>See</u> § 3553(a)(6); <u>Rodriguez</u>, 2020 WL 1627331, at *12; <u>Perdigao</u>, 2020 WL 1672322, at *4.

In sum, the Court concludes Logan's release would be consistent with the relevant § 3553(a) factors.

**V.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Logan's Motion for Compassionate Release (No. 1:12-CR-307, Dkt. Nos. 132; 137 and No. 1:12-CR-308, Dkt. Nos. 168, 173) is **GRANTED in part** to the extent that it requests compassionate release because of Logan's vulnerability to contracting a life-threading case of COVID-19; and it is further

**ORDERED**, that the Motion for Compassionate Release is **DENIED as moot** to the extent that it requests compassionate release because of Logan's age and health conditions outside the context of developing COVID-19; and it is further

14

**ORDERED**, that Logan's term of imprisonment is reduced to time served; and it is further

**ORDERED**, that Logan be released immediately; and it is

**ORDERED**, that Logan comply with the term and conditions of supervised release previously ordered by this Court;

**ORDERED**, that Logan, as part of his supervised release, must also remain in home quarantine for a period of **at least fourteen days**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      April 22, 2020
            Albany, New York


Lawrence E. Kahn
U.S. District Judge